United States District Court
Southern District of Texas
**ENTERED**
December 09, 2016
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| MICHAEL GARRETT, § | |
| § | |
| Plaintiff, § | |
| VS. § | CIVIL ACTION NO. 2:13-CV-70 |
| § | |
| LORIE DAVIS, § | |
| § | |
| Defendant. § | |

## MEMORANDUM AND RECOMMENDATION TO DENY DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

In this prisoner civil rights action, Plaintiff Michael Garrett complains that the institutional schedule at the Texas Department of Criminal Justice-Correctional Institutions Division (TDCJ-CID)'s McConnell Unit dormitory prevents him from getting at least four hours of uninterrupted sleep per night (D.E. 1). Defendant Lorie Davis's[1] predecessor, William Stephens (the Director), filed a motion for summary judgment on the following grounds: 1) Plaintiff failed to establish an Eighth Amendment violation; and 2) Plaintiff failed to demonstrate entitlement to injunctive relief (D.E. 101).

It is respectfully recommended that the Defendant's motion be denied.

### JURISDICTION

The Court has federal question jurisdiction over this civil action pursuant to 28 U.S.C. § 1331.

---

[1] Lorie Davis is the present Director of the TDCJ's Correctional Institutions Division, and the proper Defendant in this action (D.E. 117).

## I.   PROCEDURAL BACKGROUND

Plaintiff is a TDCJ-CID inmate currently confined at the McConnell Unit in Beeville, Texas. Plaintiff filed his original complaint in March 2013, alleging that he was subjected to unconstitutional conditions of confinement because the prison daily schedule prevents sleeping as much as four uninterrupted hours a night (D.E. 1). A full history of this case is outlined in the District Court's Order dated January 5, 2016 (D.E. 81), and will not be repeated. Pending is Defendant's motion for summary judgment (D.E. 101).

## II.   SUMMARY JUDGMENT EVIDENCE

In support of his motion, the Director filed:

Exhibit A:   McConnell Unit 24 hour building schedules accompanied by a business records affidavit,

Exhibit B:   Affidavit Gerry Morris with McConnell Unit Garment Factory Job Turnout Rosters from July 21 to August 13, 2014, and the

Exhibit C:   Affidavit of Warden Matt Barber.

The Director did not include a copy of Plaintiff Garrett's medical records.

The prison schedule furnished by the Director includes multiple daily counts of prisoners at 12:00 Midnight, 01:00, 02:00, 05:30, 08:00, 13:15, 19:00 and 23:00 (military time) (D.E. 101-1, p. 4). Breakfast begins between 2:30 or 3 in the morning with multiple activities scheduled from three in the morning throughout the day. "Lights out" begins at 22:30 (D.E. 101-1, p. 7). Garrett testified that during the Bed-Book/Roster

count[2] an inmate must show his identification to the guard. That count occurs approximately thirty minutes after lights out. ERO April 30, 2013, at 3:06:37 p.m.

Garrett's shift at the garment factory is from 6:30 to 11:30 on Monday through Thursday according to the affidavit of Gerry Morris, with the possibility of an optional shift from 12:30 to 16:00 (D.E. 101-2, p. 2). The records attached to Morris' affidavit are dated July 23, 2014, through August 13, 2014. On the 14 days for which the pages are legible, the records establish that Garrett worked a double shift on nine days, no shifts on three days and on two days he worked a single shift.

The affidavit of the Warden Matt Barber states that inmate counts that occur during the nighttime hours are conducted without the inmates' active participation (D.E. 101-3). His affidavit is controverted by Garrett's testimony as to the Bed-Book/Roster count. Garrett further objected to that portion of the Warden's affidavit relating to the manner in which the counts were performed on the grounds that Barber's testimony is not based on personal knowledge because he is not present during counts.

Garrett filed objections to the Director's motion for summary judgment, a motion to compel discovery, his affidavit, the affidavits of others, and a reply (D.E. 103, 104, 10, 106, 114, 116). His evidence included:

1) TDCJ Disciplinary Report on Garrett reflecting an offense date of January 22, 2015, and a hearing at January 23, 2015 at 3:17 a.m.; and

2) The Director's Responses to Plaintiff's Deposition on Written Questions.

---

[2] In *Walker v. Nunn*, 456 Fed. App'x. 419, 423 (5th Cir. Dec. 30, 2011) (per curiam) (designated unpublished), the district court heard testimony that the bed-book count requires inmates to show identification.

Garrett filed 58 inmate affidavits in which each inmate alleged that he was deprived of sleep due to the prison schedule of breakfast at 03:00 (D.E. 114). Previously Garrett filed 46 affidavits in support of his claim of sleep deprivation in the McConnell Unit (D.E. 106).

### III.   SUMMARY JUDGMENT STANDARD.

Summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "In making that determination, a court must view the evidence 'in the light most favorable to the opposing party.'" *Tolan v. Cotton*, 134 S.Ct. 1861, 1866 (2014) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970) and *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). "[A] judge's function at summary judgment is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Tolan*, 134 S.Ct. at 1866 (quoting *Anderson*, 477 U.S. at 249 (1986) (internal citation omitted)).

"A fact issue is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Stephenson v. McLelland*, 632 Fed. App'x. 177, 181 (5th Cir. Dec. 4, 2015) (per curiam) (designated unpublished) (citing *Cuadros v. Hous. Indep. Sch. Dist.*, 626 F.3d 808, 812 (5th Cir. 2010)). In making this determination, the Court must consider the record as a whole by reviewing all pleadings, depositions, affidavits and admissions on file, and drawing all justifiable inferences in favor of the party opposing the motion. *Caboni v. Gen. Motors Corp.*, 278 F.3d 448, 451 (5th Cir. 2002). Furthermore, "affidavits shall be made on personal knowledge, shall set

forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Fed. R. Civ. P. 56(e); *see also Cormier v. Pennzoil Exploration & Prod. Co.*, 969 F.2d 1559, 1561 (5th Cir. 1992) (per curiam) (refusing to consider affidavits that relied on hearsay statements); *Martin v. John W. Stone Oil Distrib., Inc.*, 819 F.2d 547, 549 (5th Cir. 1987) (per curiam). Unauthenticated and unverified documents do not constitute proper summary judgment evidence. *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994) (per curiam).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party demonstrates an absence of evidence supporting the nonmoving party's case, then the burden shifts to the nonmoving party to come forward with specific facts showing that a genuine issue for trial does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). To sustain this burden, the nonmoving party cannot rest on the mere allegations of the pleadings. Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 248. "After the nonmovant has been given an opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted." *Caboni*, 278 F.3d at 451.

### IV.   DISCUSSION

**A.   Movants' Grounds for Summary Judgment.**

The Director seeks summary judgment on the following grounds:

1) Plaintiff failed to establish any violation of the Eighth Amendment; and

2) Plaintiff has not demonstrated entitlement to injunctive relief.

B.  **Eighth Amendment**

Garrett claims that TDCJ-CID violated his right to be free from cruel and unusual punishment by scheduling prison activities in such a way that inmates have only four hours between lights out and breakfast. In addition, Plaintiff Garrett claims that when the guards perform inmate counts after lights out, the guards use very bright flashlights which tend to awaken him preventing even four uninterrupted hours of sleep. His claims are supported in part by evidence filed by the Director. The unit schedule reflects that the Bed-Book/Roster count occurs at 01:00 and that medication is passed out at 01:30 (D.E. 101-1). Thus even after lights out, unit activities continue until at least 01:30, with breakfast served by 03:00 (*Id.*).

The Eighth Amendment prohibits cruel and unusual punishment. U.S. Const. amend. VIII. "The Constitution does not mandate comfortable prisons . . . but neither does it permit inhumane ones, and it is now settled that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Harper v. Showers*, 174 F.3d 716, 719 (5th Cir. 1999) (quoting *Woods v. Edwards*, 51 F.3d 577, 581 (5th Cir. 1995) (per curiam) (internal quotations omitted)). Prison officials are required to provide humane conditions of confinement and ensure that inmates receive adequate food, clothing, shelter, and medical care. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). Conditions that "deprive inmates of the minimal civilized measure of life's necessities" violate the Eighth Amendment. *Id*.

A constitutional violation occurs only when two requirements are met, 1) the condition "must be so serious as to 'deprive prisoners of the minimal civilized measure of

life's necessities,' as when it denies the prisoner some basic human need" and 2) the responsible prison official was "'deliberately indifferent' to inmate health or safety." *Woods*, 51 F.3d at 581.  A prison official acts with deliberate indifference "only if he knows that inmates face a substantial risk of serious bodily harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847; *see also Reeves v. Collins*, 27 F.3d 174, 176–77 (5th Cir. 1994).  "To prove unconstitutional prison conditions, inmates need not show that death or serious injury has already occurred."  *Ball v. LeBlanc*, 792 F.3d 584, 593 (5th Cir. 2015) (citing *Helling v. McKinney*, 509 U.S. 25, 33, (1993) ("That the Eighth Amendment protects against future harm to inmates is not a novel proposition.")).  They need only show that there is a "substantial risk of serious harm." *Id*.

### 1. *Serious Deprivation Of Life's Necessities*

Sleep undoubtedly counts as one of life's basic needs.  It is well known that "sleep is critical to human existence . . . ."  Conditions that prevent sleep have been held to violate the Eighth Amendment.  *Walter v. Schult*, 717 F.3d 119, 126 (2d Cir. 2013); *Tafari v. McCarthy*, 714 F.Supp. 2d 317, 367 (N.D.N.Y. 2010) ("Courts have previously recognized that sleep constitutes a basic human need and conditions that prevent sleep violate an inmate's constitutional rights.") (quoting *Showers*, 174 F.3d at 720); *see also Wright v. McMann*, 387 F.2d 519, 521–22, 526 (2d Cir. 1967) (inmate stated Eighth Amendment claim by alleging he was "forced to sleep completely nude on the cold rough concrete floor and that the cell was so cold and uncomfortable that it was impossible for him to sleep for more than an hour or two without having to stand and move about in

order to keep warm"); *Robinson v. Danberg*, 729 F.Supp. 2d 666, 683 (D. Del. 2010) (denying motion to dismiss Eighth Amendment claims based on allegations that "defendants took specific acts designed to deprive [plaintiff] of sleep").

During the *Spears* hearing, Garrett testified that he tried using earplugs to help him sleep during the day when he has time, but the dormitory is very loud and earplugs do not help. Garrett testified that he cannot get enough sleep and has complained of sleep deprivation to medical professionals at the prison, although he has not been to sick call on this issue. He has headaches and his longstanding vertigo appears to be worse. He also has high blood pressure and high cholesterol. Garrett testified that his tiredness affects his mood and his recall of events. He is concerned that continued sleep deprivation will cause permanent health problems and he referenced articles that discuss the consequences of long-term sleep deprivation on health (D.E. 52) (heart attack, heart failure, stroke, obesity, psychiatric problems and other physical conditions).[3]

The Director provided no evidence to rebut Garrett's claim that the schedule prevents sleep, but argues Garrett can sleep during the day and on weekends. Although Garrett admits that he can catch some additional sleep on the weekends, it is not enough to be fully functioning. Additionally, Garrett's earlier testimony at the evidentiary hearing rebuts the Director's argument that he can sleep during the day because the

---

[3] The articles provided by Garrett on sleep deprivation from WebMD trace back to 2004. According to the Centers for Disease Control, insufficient sleep is linked to development of diabetes, increased risk of cardiovascular disease including hypertension, stroke, coronary heart disease and cardiac arrhythmia, as well as metabolic changes that may be linked to obesity. http://www.cdc.gov/sleep/about_sleep/chronic_disease.html (last visited November 8, 2016). Sleep guidelines from the National Heart Lung and Blood Institute recommend 7 to 8 hours of sleep daily for adults. http://www.cdc.gov/sleep/about_sleep/how_much_sleep.html.

ongoing noise in the unit from regular activities prevents daytime sleep. Garrett has established a material issue of fact on his claim that the prison schedule prevents adequate sleep *and* that the lack of adequate time to sleep rises to cruel and unusual punishment.[4]

### 2. *Deliberate Indifference*

A prison official violates the Eighth Amendment when he 1) "shows a subjective deliberate indifference to 2) conditions posing a substantial risk of serious harm to the inmate." *Gates v. Cook*, 376 F.3d 323, 333 (5th Cir. 2004) (citing *Farmer*, 511 U.S. at 833–34). "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Id*. Garrett testified that the prison schedule used to serve breakfast at 5:00 a.m. but was changed approximately 15 years ago. The former schedule permitted two additional hours of sleep.

The Director does not deny that the prison schedule falls within the scope of his official duties.[5] The Director argues that the prison is intended to run on a 24 hour schedule, but provided no evidence in support of the schedule change that Garrett alleged took place around the year 2000. It is apparent that the rescheduling of breakfast service

---

[4] "[U]nnecessary and wanton inflictions of pain are those that are totally without penological justification." *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981)(internal quotations omitted).

[5] "The director of the institutional division may adopt policies governing the humane treatment, training, education, rehabilitation, and discipline of inmates and may arrange for the separation and classification of inmates according to the inmates' sex, age, health, corrigibility, and type of offense for which the inmate was sentenced to the institutional division." Tex. Pen. Code Ann. § 494.002(a).

from 05:00 to 03:00 resulted in a loss of two hours of sleep for each prisoner affected by the schedule.

> Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.

*Ball*, 792 F.3d at 594 (quoting *Farmer v. Brennan*, 511 U.S. 825, 842 (1970)).

Prison officials were made aware of Garrett's complaints of sleep deprivation at the McConnell Unit, but no changes have been made to the schedule. The affidavits of other inmates and the prison schedule itself provide independent verification that the hours between lights out and breakfast are limited.

The Director's evidence does not address whether prison officials considered the impact of the new schedule on inmate's sleep habits or had knowledge that long-term sleep deprivation causes health problems or exacerbates existing health problems. There remains a fact issue as to whether the Director, who was ultimately responsible for the schedule, ignored a substantial risk of harm to prisoners, including Garrett, whose sleep was reduced from 6 hours per night (during lights out) to 4 hours (or fewer) per night.

### C.   Injunctive Relief

The Director's summary judgment motion asserts that Garrett cannot establish entitlement to injunctive relief that complies with the parameters of the PLRA. For a permanent injunction to issue the plaintiff must prevail on the merits of his claim and establish that equitable relief is appropriate in all other respects. *See Dresser-Rand Co. v. Virtual Automation Inc.*, 361 F.3d 831, 847 (5th Cir. 2004) (citing *Amoco Prod. Co. v.*

*Village of Gambell*, 480 U.S. 531, 546 n.12 (1987) (recognizing that the standard for a permanent injunction is essentially the same as for a preliminary injunction with the exception that the plaintiff must show actual success on the merits rather than a mere likelihood of success)). "A party seeking a permanent injunction must also plead and prove an irreparable injury for which no adequate remedy at law exists." *Dresser-Rand*, 361 F.3d at 847-48.

Injunctive relief for prison conditions is further limited by the PLRA. 18 U.S.C. § 3626(a)(1).[6] "In Eighth Amendment cases, plaintiffs can only obtain a remedy that reduces the risk of harm to a socially acceptable level. Some risk is permissible and perhaps unavoidable." *Ball*, 792 F.3d at 599. The PLRA also limits relief to the particular plaintiff(s) before the court. *Id*. The only plaintiff before the Court is Garrett.

The Director's motion for summary judgment as to injunctive relief is premature, particularly here where fact issues preclude summary judgment on the merits of Garrett's Eighth Amendment claim. Whether any narrow remedy can be constructed cannot be determined without hearing all of the evidence that would be elicited at trial. Denial of the Director's motion for summary judgment on the grounds that Garrett cannot show entitlement to a permanent injunction is recommended.

---

[6] **(1) Prospective relief.--(A)** Prospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs. The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the relief.

*Id*.

## CONCLUSION

Based on the foregoing, it is respectfully recommended that the Director's motion for summary judgment (D.E. 101) be DENIED.

Respectfully submitted this 9th day of December, 2016.

_____
B. JANICE ELLINGTON
UNITED STATES MAGISTRATE JUDGE

## NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel. Within **FOURTEEN (14) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of *plain error,* from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (en banc).