UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| MICHAEL GARRETT, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 2:13-CV-00070 |
| | § | |
| LORIE DAVIS, | § | |
| | § | |
| Defendant. | § | |

## [PLAINTIFF'S AMENDED PROPOSED] FINDINGS OF FACT & CONCLUSIONS OF LAW

Plaintiff Michael Garrett submits his Amended Proposed Findings of Fact and Conclusions of Law for the bench trial on Plaintiff's claims under 28 U.S.C. § 1983. Plaintiff reserves the right to request additional or amended findings.

### FINDINGS OF FACT

1. Plaintiff Michael Garrett filed a Step One grievance with the McConnell Unit of the Texas Department of Criminal Justice (TDCJ) on August 28, 2009 complaining of sleep deprivation. (1 R.R. 169; Exh. 101, 292)[1] TDCJ's response to the Step One grievance, dated September 8, 2009, was:

   > There was an investigation conducted into your allegations regarding the building schedule. The building schedule is designed to establish and operate the facility effectively in a 24-hour period.
   > (1 R.R. 171-72; Exh. 101, 293)

---

[1] References to the Reporter's Record of the November 13-15, 2018 bench trial will be referred to throughout as "R.R." followed by the page number and preceded by the volume number. Volume 1 is trial testimony from November 13, 2018 and Volume 2 is trial testimony from November 14, 2018. Trial Exhibits will be referred to throughout as "Exh." and followed by a comma with the Bates-label number given in TDCJ's and Plaintiff's discovery production.

Mr. Garrett then filed a Step Two grievance with TDCJ complaining of sleep deprivation on September 14, 2009. (1 R.R. 163; Exh. 101, 294) TDCJ's response to Mr. Garrett's Step Two grievance, dated September 30, 2009, was:

> Your complaint has been noted and appropriately addressed at step one. You have been incarcerated since 1992; you should be aware that facility are [sic] a 24/7 operations [sic]. There is no evidence to support your claim that your rights have been violated. No further action warranted.
> (1 R.R. 171; Exh. 101, 295)

2. Michael Garrett filed another Step One grievance with TDCJ complaining of sleep deprivation on August 19, 2011. (1 R.R. 173; Exh. 102, 350) Mr. Garrett did not file a Step Two to the August 19, 2011 Step One grievance because TDCJ marked his Step One grievance as "not grievable" and he believed from TDCJ's grievance policy would subject him to sanctions if he appealed an issue that was marked as "not grievable" by TDCJ. (1 R.R. 172-73; Exh. 102, 344-45, 349)

3. Michael Garrett filed his complaint in this Court on March 13, 2013. (See Docket Entry 1; 1 R.R. 167) In his complaint he stated that the TDCJ was depriving him of sleep in violation of his Eighth Amendment right to be protected against cruel and unusual punishment.

4. Michael Garrett testified that he has been an inmate with TDCJ since he was twenty-five years old. (1 R.R. 163) He testified that he was in good health when he entered TDCJ. *Id.* He also testified that he was not on any medications that he could remember when he entered TDCJ. *Id.* This is corroborated by Mr. Garrett's 1995 medical records which show no prescribed medications. (Exh. 10, 1974)

5. Mr. Garrett has been incarcerated about twenty-seven years. (1 R.R. 163) As of September 20, 2018, Mr. Garrett is forty-eight years old and prescribed eight medications. (Exh. 11, 4497) Reviewing Mr. Garrett's medical records reveals numerous health problems. (Exhs. 10 & 11) Michael Garrett testified that there has been a general decline in his health over

the years. (1 R.R. 164) Michael Garrett testified that he believed the decline in health was a result of not getting enough sleep. (1 R.R. 164)

6. Dr. Isaac Kwarteng testified that he is Medical Director for University of Texas Medical Branch (UTMB) Correctional Managed Care (CMC). (2 R.R. 4-5) Dr. Kwarteng has a degree in osteopathic medicine. (2 R.R. 5) Dr. Kwarteng did not testify to any special training or knowledge of sleep and its effects on human functioning. Dr. Kwarteng testified that he started working at the McConnell Unit in April of 2014. (2 R.R. 8) Dr. Kwarteng testified that he has on occasion been Michael Garrett's treating physician. (2 R.R. 6)

7. Dr. Kwarteng testified that Mr. Garrett has a history of hypertension. (2 R.R. 8-9) Dr. Kwarteng testified that he has Mr. Garrett on medications for hypertension. (2 R.R. 34) Dr. Kwarteng testified that, according to Mr. Garrett's medical records, Mr. Garrett was taking Amlodipine for blood pressure. (2 R.R. 35; Exh. 11, 4528) He later testified that he believed Mr. Garrett was taking Proponalol and Lisinopril for hypertension. (2 R.R. 40; Exh. 11, 4497) All three drugs which are prescribed for high blood pressure are listed on Michael Garrett's medical records. (Exh. 11, 4497; Exh. 11, 4528)

8. Dr. Isaac Kwarteng testified that he believed that Michael Garrett had good kidney function. (2 R.R. 21) But Dr. Kwarteng later admitted that chronic kidney disease was listed under Michael Garrett's "significant medical history" summary. (2 R.R. 40; Exh. 11, 4647) Michael Garrett testified that he was diagnosed with kidney disease in 2013. (1 R.R. 164)

9. Dr. Isaac Kwarteng testified that he could not recall from his review of Michael Garrett's medical records that any of Mr. Garrett's seizures have been "witnessed by staff or medical staff." (2 R.R. 31) However, Dr. Kwarteng later testified that he has Mr. Garrett on anti-

3

seizure medications. (2 R.R. 34) Michael Garrett testified that his seizures have increased since he first entered TDCJ. (1 R.R. 163)

10. Most recently, Dr. Kwarteng testified that Michael Garrett had a problem with his foot which had developed from a small lesion back in July of 2018. (2 R.R. 16-17) The wound is now, after three months, serious enough to require specialty wound care. *Id.* During the trial in November of 2018, the Court witnessed Mr. Garrett hobble in and out of court with a bandaged foot and a cane.

11. Dr. Candice Alfano is the Director for the Sleep and Anxiety Center of Houston. (1 R.R. 33) She is a licensed clinical psychologist with a Doctor of Philosophy in clinical psychology. *Id.* She did a one-year fellowship at John Hopkins University School of Medicine and a post-doctoral fellowship there as well. (1 R.R. 34) She had a faculty position as a clinician at George Washington School of Medicine where she worked as a sleep specialist "consulting with different medical disciplines in terms of the role of sleep in the development and process of various diseases." *Id.* She conducts federally funded research on sleep which includes grants from NASA, the Department of Defense, the National Science Foundation, and the National Institutes of Health. *Id.*

12. Dr. Alfano has worked with medical records in her past clinical work as well as her current research. (1 R.R. 34) Dr. Alfano is not a physician but she is a psychologist who is capable, based on her expertise, of diagnosing various medically and behaviorally related sleep disorders. She is also able to prescribe therapies for issues related to sleep. (1 R.R. 35)

13. Dr. Candice Alfano reviewed the McConnell Unit Building Schedules prior to giving testimony. (1 R.R. 35; Exh. 2) Based on the McConnell Unit Building Schedules, Dr. Alfano deduced that Michael Garrett could potentially get four hours of sleep between

11:00 p.m. when the bed/book count happened and 3:00 a.m. when the first meal is served. (1 R.R. 36) Michael Garrett testified that he is not able to get six continuous hours of sleep because the McConnell Unit does bed/book count at 11:00 p.m. and he has to wake up at 1:00 a.m. to take medication.

14. Dr. Candice Alfano testified that four hours is not enough sleep for a healthy individual.

15. Dr. Candice Alfano testified that according to a consensus statement that's been put out by several leading scientific bodies including the American Academy of Sleep Medicine and the National Sleep Foundation, a minimum of seven hours of sleep is necessary for health and wellbeing. (1 R.R. 37)

16. Dr. Candice Alfano testified that Michael Garrett was getting "far below what would be recommended for health, and certainly for heart health." (1 R.R. 39; Exh. 103) Dr. Alfano further testified that "inadequate sleep is robustly related to hypertension." (1 R.R. 40-41; Exh. 104) Dr. Alfano cited a study which linked sleeping less than six and seven hours per night with an increased risk of hypertension and noted that in the study there were no participants who were receiving four hours or less sleep per night like Mr. Garrett. (1 R.R. 41-42; Exh. 105) Dr. Alfano noted from 2007 to the present that Mr. Garrett's blood pressure levels have remained at a hypertensive level. (1 R.R. 48-49)

17. Dr. Candice Alfano testified that there is a tri-directional relationship between sleep, hypertension, and kidney disease. (1 R.R. 50) Dr. Alfano stated that hypertension is the second leading cause of kidney disease in the United States. *Id.* Dr. Alfano stated that the kidneys function according to a circadian pattern. *Id.* "One of the reasons that sleep is so closely related to kidney disease is that we know the kidneys go through some especially important processes during sleep…including excretion of different waste…So if somebody

is not sleeping for an adequate duration, the kidneys are not able to function optimally." *Id.* Dr. Alfano noted that Mr. Garrett has been diagnosed according to the medical records she reviewed with chronic kidney disease. (1 R.R. 49)

18. Dr. Candice Alfano noted that according to his medical records Mr. Garrett has had a number of seizures, including one that involved a fall in the shower, and seizures are known to be triggered by sleep deprivation. (1 R.R. 65-66)

19. Dr. Candice Alfano noted that Michael Garrett had been diagnosed with a history of depression and one suicide attempt according to his 1995 initial psychological evaluation medical records. (1 R.R. 45; Exh. 10, 2279-2283) Dr. Alfano stated that "depression is, of all the mental health disorders, the one that's most closely linked with sleep. And we know, from treatment research, that, oftentimes, if the individual is not receiving adequate sleep, they're likely to relapse or they're just simply likely to not respond to treatment." (1 R.R. 45)

20. Dr. Candice Alfano testified that sleep deprivation reduces our ability to manage our emotions and that it would not be surprising to her to learn that someone who is sleep-deprived is having conflicts and altercations with others. (1 R.R. 66)

21. Dr. Candice Alfano testified that even if sleep deprivation were not the cause of Michael Garrett's hypertension, it is not helping his established hypertension condition. (1 R.R. 81) In fact, Dr. Alfano stated that depriving a healthy person of sleep for even one night can cause spikes in blood pressure. *Id.* Dr. Alfano stated that there is a "proven relationship" between hypertension and sleep deprivation. *Id.*

22. Dr. Candice Alfano stated that the ideal conditions for sleep would start with opportunity for sleep, "the most important thing is for somebody to have the opportunity to sleep for a

minimum of seven hours." (1 R.R. 51) She further testified that the ideal environment for sleep would have "reduced light, reduced noise, and at least comfortable conditions for somebody to fall asleep and maintain sleep." *Id.*

23. Dr. Candice Alfano testified that "[s]leep duration is the most essential feature of sleep." (1 R.R. 47) Dr. Alfano stated that in order for sleep to have a restorative effect, it has to happen continuously, without interruption. (1 R.R. 53) Inmates cannot "catch up" on sleep with naps during the day. *Id.* Dr. Alfano often tells her patients, "Sleep is not a bank; you can't pay it back." *Id.* Dr. Alfano testified that sleep "has to occur, not only in a continuous fashion, but also during the circadian period, when it's supposed to happen, which is essentially our biological night." *Id.* Sleep needs to "coincide with nighttime on the external clock in order, again, for all the biological functions that are restored during sleep, like kidney function and heart function, to receive the rest they need." *Id.*

24. When asked for a recommendation on how TDCJ could improve sleeping conditions for Michael Garrett, Dr. Candice Alfano opined "that if temperature is unable to be manipulated or controlled, [the important thing] would be to provide an adequate period during which light and noise were reduced—and interruptions…doing rack-up—delaying that to later in the morning." (1 R.R. 52)

25. On Weekdays/Non-Holidays the McConnell Unit racks up inmates at 10:30 p.m., conducts a Bed Book/Roster Count at 11:00 p.m., and serves 1st Meal at 3:30 a.m. (1 R.R. 124)

26. On Weekends/Holidays the McConnell Unit racks up inmates at 1:00 a.m., conducts a Bed Book/Roster Count at 1:00 a.m., and serves 1st Meal at 3:30 a.m. (1 R.R. 124-125)

27. Bed Book/Roster Counts require inmates to show corrections officers their identification cards. (1 R.R. 123)

28. Both the Weekday/Non-Holiday and Weekend/Holiday 24-Hour Building Schedules at the McConnell Unit do not provide for six continuous hours of sleep at night.

29. TDCJ has a written policy on the amount of time inmates should be allowed time out of their cells. (1 R.R. 119-20; Exh. 3)

30. Regional Director Miguel Martinez admitted that if rack-up were done earlier then the bed/book count, which requires that an inmate show identification, could not also be done at an earlier time. (1 R.R. 124)

31. TDCJ has no written policy on minimum standards for sleep in prison unit schedules. (1 R.R. 184)

32. Plaintiff Michael Garrett, Inmate Paul Douglas Durham, Inmate Gerald Ricks, and Inmate James Legate testified that they do not adequate sleep at the McConnell Unit. Mr. Durham and Mr. Ricks testified that they go to bed around 10:30 p.m. and wake up around 2:30 a.m. Mr. Legate testified that he skips breakfast, so he can sleep in. (1 R.R. 98-99)

## CONCLUSIONS OF LAW

1. Michael Garrett exhausted his administrative remedies before filing his complaint regarding sleep deprivation in this Court.

2. The evidence shows that seven hours of continuous sleep is necessary for basic human functioning and that the 24-hour building schedules at the McConnell Unit, both weekday and weekend, do not allow for seven uninterrupted, continuous hours of sleep by inmates.

3. Plaintiff Michael Garrett has shown the prison building schedules result in an extreme deprivation of the minimal measure of life's necessities, namely sleep.[2] Plaintiff Garrett

---

[2] *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) ("[E]xtreme deprivations are required to make out a conditions-of-confinement claim.").

8

has had a sleep expert, Dr. Candice Alfano, testify that getting four hours of sleep is an extreme deprivation and exposes Michael Garrett to health risks. Dr. Alfano also testified that the deprivation could not be mitigated by taking naps during the day.

4. Plaintiff Garrett has also shown that Defendant acted with deliberate indifference to his complaints of deprivation.[3] Plaintiff filed grievances as early as 2009 as well as 2011 which put Defendant Davis on notice that Plaintiff was suffering from sleep deprivation. Regional Director Miguel Martinez admitted that the McConnell Unit building schedules could be adjusted but maintained that the current times for the bed/book count and first meal needed to stay the same for security reasons. TDCJ put on no evidence that showed a correlation between the specific times of those activities and security, but rather relied on a nebulous claim of security to justify the times for those activities.

5. Deliberate indifference in this context means that Defendant Davis knew of and disregarded an excessive risk to inmate health or safety. Defendant Davis:

    a. was aware of facts from which the inference could be drawn that a substantial risk of serious harm exists; and was able to draw that inference.[4]

    b. Deliberate indifference may be inferred because the risk of harm was obvious.[5]

6. Plaintiff Garrett has proved the two elements of deliberate indifference by a preponderance of the evidence. Plaintiff Garrett has cited to numerous studies which link less than seven hours of continuous sleep at night to increased risk of hypertension and kidney disease. Defendant Davis knew that the 24-hour building schedules did not allow for seven

---

[3] *Wilson v. Seiter*, 501 U.S. 294, 304 (1991).
[4] *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).
[5] *Hope v. Pelzer*, 536 U.S. 730, 737–38 (2002) ("We may infer the existence of this subjective state of mind from the fact that the risk of harm is obvious." (citing *Farmer*, 511 U.S. at 842)).

continuous hours of sleep at night but has done nothing to adjust the schedule to accommodate the necessary amount of sleep for healthy individuals.

7. This Court concludes that Defendant Davis violated Plaintiff's Eighth Amendment right to be protected from cruel and unusual punishment, and Plaintiff Garrett should be awarded a declaratory judgment and injunctive relief requiring the Texas Department of Criminal Justice to create policies regarding minimum standards of sleep and to adjust its building schedules to allow for seven continuous hours of sleep at night.

    Respectfully submitted,

    RUSTY HARDIN & ASSOCIATES, LLP

    */s/ Naomi Howard*
    Naomi Howard
    ATTORNEY-IN-CHARGE FOR
    PLAINTIFF MICHAEL GARRETT

    State Bar No. 24092541
    Federal ID No. 3059447

    5 Houston Center
    1401 McKinney, Suite 2250
    Houston, Texas 77010
    Telephone: (713) 652-9000
    Facsimile: (713) 652-9800
    nhoward@rustyhardin.com

Of Counsel:
Terry Kernell
State Bar No. 11339020
Federal I.D. No. 15074

5 Houston Center
1401 McKinney, Suite 2250
Houston, Texas 77010
Telephone: (713) 652-9000
Facsimile: (713) 652-9800
tkernell@rustyhardin.com

ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

I hereby certify that on this 12th day of December, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all registered parties.

  */s/ Naomi Howard*
  Naomi Howard