United States District Court
Southern District of Texas
**ENTERED**
March 18, 2019
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| MICHAEL GARRETT, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 2:13-CV-70 |
| | § | |
| LORIE DAVIS, | § | |
| | § | |
| Defendant. | § | |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

Plaintiff Michael Garrett (Garrett), an inmate housed in the McConnell Unit of the Texas Department of Criminal Justice (TDCJ), prosecuted this action against Lorie Davis in her official capacity as Director of the TDCJ-Correctional Institutions Division.[1] Pursuant to the Civil Rights Act, 42 U.S.C. § 1983, Plaintiff seeks declaratory relief that TDCJ's 24-hour building schedule fails to provide him with an opportunity to sleep continuously for at least six hours, in violation of his Eighth Amendment rights against cruel and unusual punishment. The case was tried to the bench on November 13 and 14, 2018. Having considered the pleadings of the parties, evidence, proposed findings of fact and conclusions of law, and arguments of counsel, the Court issues the following findings of fact and conclusions of law, DENYING Plaintiffs' requested relief.

---

[1] A lawsuit against a governmental official in her official capacity is a suit against the state office she serves. *E.g., Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 n.55 (1978). For ease of reference, Defendant will be referred to herein as TDCJ.

## STANDARD OF REVIEW

Garrett's complaint concerns the conditions of his confinement. To sustain his burden of proof, Garrett must first show that the issue results in the denial of "the minimal civilized measure of life's necessities," threatening his health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). In other words, he must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* (citing *Helling v. McKinney*, 509 U.S. 25, 35 (1993)).

Second, he must show that TDCJ's official acted with deliberate indifference, meaning that the official:

> (1) was aware of facts from which an inference of an excessive risk to the prisoner's health or safety could be drawn; (2) drew an inference that such potential for harm existed; and (3) disregarded that risk by failing to take reasonable measures to abate it.

*Polk v. Det. Ctr. of Natchitoches Par.*, 32 F. App'x 128 (5th Cir. 2002) (citing *Farmer*, 511 U.S. at 837, 847). "The second requirement follows from the principle that 'only the unnecessary and wanton infliction of pain implicates the Eighth Amendment.'" *Farmer*, 511 U.S. at 834.

## DISCUSSION

### A. Substantial Risk of Serious Harm

Garrett began his TDCJ incarceration at the age of twenty-five (25) years. At that time, his only health complaint was a seizure disorder. At the time of trial, he was forty-eight (48) years old. He is prescribed eight (8) medications and now complains of

hypertension, chronic kidney disease, and continued, more frequent, seizures. He also complains of a wound on his foot that is not healing.

Isaac Kwarteng, D.O. is the medical director for University of Texas Medical Branch Correctional Managed Care, providing care to inmates in TDCJ's McConnell Unit, where Garrett is housed. Dr. Kwarteng, who began seeing patients from the unit in 2014, testified as Garrett's treating physician. He confirmed that Garrett's medical records show a history of hypertension, with three medications currently prescribed for that condition. Garrett's blood pressure is adequately controlled in that some tests showed it to be in the normal range. Other tests that indicated elevated blood pressure correlated with non-medical events that explain the higher levels, such as conflict with a correctional officer and transfer to more restrictive housing assignments.

Garrett testified that he was diagnosed in 2013, prior to Dr. Kwarteng's treatment, with kidney disease. Garrett's chart does list chronic kidney disease as one of his conditions. However, during Dr. Kwarteng's care, Garrett's kidney function has been good, testing well within a normal range. And Garrett is not being treated for the condition.

With respect to Garrett's complaints of seizures, TDCJ has not sent Garrett out for the medical tests necessary to confirm any such medical condition. Each of the seizures of which Garrett has complained have been without any witness—fellow inmate, correctional officer, or otherwise. And they have had no lasting effects. Nonetheless, Garrett is prescribed anti-seizure medications.

Garrett has not complained of, been tested for, or been diagnosed with any sleep disorder. He does not complain of insomnia. Rather, his sleep-related complaint is that he does not get enough uninterrupted sleep, which he alleges is the cause of his hypertension, kidney disease, and continued seizure disorder. Garrett did not offer any expert testimony establishing that a lack of sufficient uninterrupted sleep has, within reasonable medical probability, caused his other complaints. Neither is there any evidence that rules out other causes for Garrett's medical complaints, such as his age or family history.

Instead, he offered the testimony of Candice Alfano, a licensed clinical psychologist who is a University of Houston professor and the director of the Sleep and Anxiety Center of Houston. Professor Alfano is not a physician and did not examine Garrett. She could not establish a cause-and-effect relationship between his sleep schedule and any medical complaint he has made. Rather, she testified that studies have found an association between lack of sleep and the same health conditions of which Garrett complains. From those studies, a "robust relationship" between health and sleep was identified. Professor Alfano highlighted that the American Academy of Sleep Medicine and the National Sleep Foundation issued a consensus statement that a minimum of seven (7) hours of sleep is necessary for optimal health. *See* Plaintiff's Exhibit 106. At the same time, however, she testified that less than half of the population actually gets seven (7) or more hours of continuous sleep daily.

The studies on which Professor Alfano's opinion was based find only an association, not cause-and-effect relationship, between continuous sleep and health

disorders. They also concede that age and a number of other factors contributed to a person's susceptibility to the medical complaints at issue here as well as the ability to sleep. The Court cannot discount the fact that Garrett's age has advanced significantly as his health has allegedly deteriorated. And naps could contribute to a person's ability to initiate and maintain sleep, even if the opportunity for more than seven hours of continuous sleep were provided. So the message of both the studies and Professor Alfano's testimony goes to the issue of what sleep conditions are associated with the best health. They are designed to promote an aspirational goal. They do not establish the standard for a deprivation of a life necessity.

The Fifth Circuit held, "[S]leep undoubtedly counts as one of life's basic needs. Conditions designed to prevent sleep, then, might violate the Eighth Amendment." *Harper v. Showers*, 174 F.3d 716, 720 (5th Cir. 1999). That does not mean that conditions designed to promote safety and efficiency in housing large numbers of prisoners, but which have the effect of limiting continuous hours of sleep, are cruel and unusual—particularly where sleep is not prohibited, it is interrupted. While sleep is clearly important, the evidence is insufficient to demonstrate that any specific number of hours of continuous sleep is the minimal civilized measure of life's necessities or that deprivation of that specific amount of sleep actually threatens Garrett's health or safety.

The Court FINDS that Garrett did not sustain his burden of proof to show that his sleep schedule poses a substantial risk of serious harm.

## B. Deliberate Indifference

The 24-hour building schedules for the McConnell Unit were admitted into evidence and discussed at length. They demonstrate the complex number of activities and timing issues that have to be coordinated in a penological institution housing approximately 2,800 inmates, including: inmate counts; medical appointments and the distribution/ administration of medications; meals; programs and recreation; prison job shifts; showers; visitation; craft shops; religious services; grooming; and distributing necessities/laundry. The schedule is developed to accommodate prisoners' mental and physical health, along with the institution's logistical challenges of space and personnel—all within the parameters of the joint need for safety and security.

Garrett specifically raised his complaint regarding insufficient continuous sleep time to his medical providers and in two grievances filed with TDCJ. TDCJ's response to the first, step one grievance was: "There was an investigation conducted into your allegations regarding the building schedule. The building schedule is designed to establish and operate the facility effectively in a 24 hour day period." The first, step two grievance was rejected on the same basis and because there was no evidence to support a violation of rights. The second, step one grievance was rejected as "not grievable."

While TDCJ was thus aware of the complaint and the specific danger that Garrett claims the sleep schedule posed, Garrett did not show—even at the time of trial—that he was exposed to an excessive risk to his safety or health or that TDCJ was aware of that inference and had actually drawn the inference. Moreover, the TDCJ response claims a reasonable effort to abate the risk by invoking the defense that a legitimate penological

interest is behind the way the building schedule was structured. At trial, Garrett did not provide any evidence that an alternate 24-hour building schedule could be constructed within the resources of TDCJ to provide more continuous sleep or that the current schedule was an unnecessary and wanton infliction of pain.

The Court FINDS that Garrett did not sustain his burden of proof to show that TDCJ was deliberately indifferent to a serious health need.

## CONCLUSION

For the reasons set out above, the Court HOLDS that Garrett has failed to prove the elements of his claims and Defendant TDCJ is entitled to judgment against Garrett.

ORDERED this 18th day of March, 2019.

_____
NELVA GONZALES RAMOS
UNITED STATES DISTRICT JUDGE